# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 3:06cr00008 |
| | | Case No. 3:08cv00242 |
| Plaintiff/Respondent, | : | |
| vs. | : | District Judge Thomas M. Rose |
| | | Magistrate Judge Sharon L. Ovington |
| WILLIE E. WHITE, | : | |
| Defendant/Petitioner. | : | |

## REPORT AND RECOMMENDATIONS[1]

## I.  INTRODUCTION

In April 2006 Willie E. White pled guilty to one count of attempted armed bank robbery, a violation of 18 U.S.C. §2113(a) and (d). (Doc. #28 at 33; Doc. #23). He was later sentenced, in part, to 188-month term of imprisonment. (Doc. #23).

White, through counsel, pursued a direct appeal. *See* Doc. #s 30, 31. His counsel, however, moved to withdraw and filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967). *See* Doc. #30. Counsel submitted two issues for review: "1) whether White is a career offender as defined in USSG § 4B1.1; and 2) whether White's sentence is reasonable." *Id*. at 2. The Court of Appeals found no merit in these claims. The Court of Appeals affirmed White's 188-month sentence, finding it both procedurally and substantively reasonable. *Id*. at 3-4. The Court of Appeals also determined that White "knowingly, intelligently, and voluntarily pleaded guilty." *Id*. at 3. And the Court of

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

Appeals' independent examination of the record revealed no nonfrivolous issues for appeal. *Id*. at 5.

Having completed his direct appeal without success, White returns to this Court with a *pro se* Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. §2255.[2] (Doc. #32). The case is presently pending upon White's Motion, the Government's Answer (Doc. #35), and the record as a whole.

## II. DISCUSSION

### A. Applicable Law

Construing White's *pro se* Motion in his favor, he claims that his counsel, Thomas Anderson, Esq., provided constitutionally ineffective assistance in violation of his rights under the Sixth Amendment to the Constitution. *Cf. United States v. Caver*, 470 F.3d 220, 250 (6th Cir. 2006)("There is a preference for raising ineffective assistance of counsel claims on collateral review under 28 U.S.C. §2255.").

> To establish ineffective assistance of counsel, [White] must prove (1) that his trial counsel's representation 'fell below an objective standard of reasonableness,' and (2) that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' *Strickland v. Washington,* 466 U.S. 668, 687-94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Supreme Court subsequently modified *Strickland's* prejudice prong in the case of a defendant who pleads guilty, holding that such a defendant 'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and instead would have insisted on going to trial.' *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

*Short v. United States*, 471 F.3d 686, 691-92 (6th Cir. 2006).

"A defendant challenging his attorney's conduct during plea bargaining..., 'must

---

[2] White submits his §2255 Motion on a form titled, "Application for Leave to File a Second or Successive Motion to Vacate...." (Doc. #32). Yet the present record indicates that this is his first §2255 Motion. Consequently, treating White's Motion – in his favor – as his first §2255 Motion, rather than a successive motion, is warranted.

show that counsel did not attempt to learn the facts of the case and failed to make a good-faith estimate of a likely sentence. He must also show that his lawyer's deficiency was a decisive factor in his decision to plead guilty.'" *Pough*, 442 F.3d at 966 (quoting *United States v. Cieslowski*, 410 F.3d 353, 358-59 (7th Cir.2005)).

   B.   **Analysis**

White first asserts that his counsel provided ineffective assistance by refusing his request to raise the defense of insanity under Fed. R. Crim. P. 12.2. The basis of White's request appears to arise in a pro se document he filed on or about February 14, 2006, before he entered his guilty plea. Petitioner captioned the document, "Notice of Insanity Defense Rule 12.2." (Doc. #17 at 1). Construing the document in Petitioner's favor, he maintained that he was not guilty by reason of insanity due to his addition to heroin, cocaine, and marijuana." *Id*. In support of his §2255 Motion, White has not presented any evidence or further information regarding his mental state at the time of the attempted bank robbery or at the time of his guilty plea.

During his plea hearing, White admitted (Doc. #26 at 7-8) that the following facts were true:

> [O]n or about December 25, 2005, Defendant Willie E. White walked into the Huntington National Bank located at 1607 Springfield, Ohio, the bank. Went to the counter while brandishing a knife [and] demanded from a teller employed by the bank all the 100's[,] 50's and 20's.
>
> The Defendant told that teller that if she placed the die pack in with the money, he would take her with him, or words to that effect.
>
> As the teller placed the money on the counter, but before Defendant physically took the money, Defendant was apprehended by security officers, security officer and taken into custody.
>
> The deposits of the bank were at the time insured by the Federal Deposit Insurance Corporation....

3

(Doc. #26 at 7). When the Court asked White if he understood those facts, White answered, yes. *Id*. When the Court asked White if those factual allegations were indeed true, he answered, yes. *Id*. at 8. And when the Court asked White if those were the facts he wished to plead guilty to, he answered, yes. *Id*. The Court also explained to White, and White understood, that by pleading guilty, he was waiving numerous constitutional rights, including the right to require the Government to prove each element of the charged offense beyond a reasonable doubt. *Id*. at 25-27.

During White's sentencing hearing in August 2006, White's counsel addressed intoxication as follows:

> Mr. White was using and was on, I guess, what can be described as a bender when he went into the bank.
>
> Now, Mr. White remembers being in the ... [b]ank, does not remember what motivated him to go in. Does not remember the events that transpired in the bank, but he does remember thinking about somebody that he had met when he was in prison earlier in life and about banks and that must have triggered something. And basically it was a desperate act and the video tape clearly shows that. And I don't think that there would be any objection that this wasn't a well thought out crime.
>
> In fact, it is evident what this was. This was a man who didn't know what he was doing while this may not rise to the level of a legal defense, because he clearly had intoxicated himself, I think the Court can consider the offense conduct.

(Doc. #29 at 16-17).

The most significant part of the above statements is counsel's conclusion that White's voluntary intoxication "may not rise to the level of a legal defense." *Id*. at 17. This conclusion by counsel did not fall below the "objective standard of reasonableness" applicable to determining whether he provided constitutionally ineffective assistance. *See Short*, 471 F.3d at 691-92. To present an insanity defense, White would have been required to proceed under 18 U.S.C. §17, which would have placed the burden on him to prove by clear and convincing evidence that at the time of the attempted bank robbery, he,

4

"as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or wrongfulness of his acts." *Id*. Not only does this statute make it very difficult for a defendant to prove the insanity defense,[3] such proof becomes even more difficult when voluntary intoxication is involved. The Second Circuit Court of Appeals explains:

> "Of significance to this case, Congress, speaking through the Senate Judiciary Committee, stated: 'The committee also intends that, as has been held under present case law interpretation, the voluntary use of alcohol or drugs, even if they render the defendant unable to appreciate the nature and quality of his acts, does not constitute insanity or any other species of legally valid affirmative defense.'... Statements of congressional intent are rarely so clear."

*United States v. Garcia*, 94 F.3d 57, 61-62 (2nd Cir. 1996) (quoting S.Rep. No. 225, 98th Cong., 1st Sess. 222, 229 (1983), *reprinted in*, 1998 U.S.C.C.A.N. 3182, 3407); *see United States v. Knott*, 894 F2d 1119, 1121-22 (9th Cir. 1990).

In addition, the United States Court of Appeals for the Sixth Circuit has explained that bank robbery, as defined in paragraph one of 18 U.S.C. §2113(a) – the statute White pled guilty to violating – is a general intent crime, *see United State v. Gonyea*, 140 F.3d 649, 653-54 (6th Cir. 1998), for which voluntary intoxication is not a defense, *see United States v. Veach*, 455 F.3d 628, 631 (6th Cir. 2006)("such defenses [diminished capacity or voluntary intoxication] have no applicability to general intent crimes.").

White, moreover, has not shown that counsel's decision not to present a voluntary intoxication defense caused White any prejudice. White's Motion does not describe circumstances sufficient to raise a reasonable probability that if counsel had been willing to present his voluntary intoxication/insanity defense at trial, White would have proceeded to trial rather than plead guilty. *See Short*, 471 F.3d at 692. This is so because White only presents his own conclusory assertion of intoxication. Neither White's Motion nor the

---

[3] *E.g, United States v. Richards*, 9 F.Supp.2d 455, 457 (D.N.J. 1998)("'[o]nly in the rare case ... will even a legally insane defendant lack the requisite mens rea purely because of a mental defect.'" (citation omitted)).

5

record presents evidence or circumstances tending to show that he had any grounds for concluding that his intoxication rose to the level of a legal defense. *See Santiago v. United States*, 2008 WL 1991627 at *5 (E.D. Pa. 2008)("Even if Petitioner was intoxicated and under the influence of drugs during the robbery, such impairments do 'not satisfy the requirement for legal insanity and that the defendant be 'unable to appreciate the nature and quality or the wrongfulness of his acts.'")(quoting, in part, 18 U.S.C. §17(a); other citation omitted).

      White next contends that counsel lied to him by leading him to believe that he would receive a sentence at the lower end – 5 years – ranging from the possible sentences of 5 or 10 or 25 years. This allegations is, however, belied by the record of the plea hearing and White's plea agreement. During the plea hearing, White acknowledged that he understood the maximum possible sentence he could get was 25 years and that the Court could sentence him to a 25-year term of imprisonment. (Doc. #29 at 11-12). White further acknowledged that he understood his counsel's estimates of the possible sentences he might receive and that his counsel could merely estimate the sentence he might receive. *Id*. at 19-20. Most significantly, when asked if anyone had promised him a specific sentence, White answered, "No." *Id*. at 30. White's plea agreement, which he executed and asked the Court to accept, *id*. at 28-31, explained that the statutory maximum penalty was a 25-year term of imprisonment and stated, in part, "Defendant further understands that the Sentencing Guideline range is an advisory range to be considered by the Court along with other appropriate sentencing factors. Defendant understands that the Court alone will determine an appropriate sentence, which may or may not be consistent with any recommendations of the parties." (Doc. #21 at 2). White further acknowledged in the plea agreement that it constituted the entire plea agreement and that "[n]o other agreements, promises, deals, bargains or understanding exist which modify or alter these terms." *Id*. at 3. For all these reasons, White's claim that his counsel promised him a 5-year sentence lacks merit.

White further claims contends that counsel provided ineffective assistance by failing to contest the report regarding the presentence investigation (PSI) and by not reviewing the PSI with him. Yet the record of White's sentencing conflicts with these allegations. During that hearing, White's counsel stated, "Mr. White has met with counsel to discuss the application of the career offender guideline. And I articulated to Mr. White that I did not feel that it would be appropriate to lodge a formal objection based upon my understanding of how those offenses are computed. Mr. White, nevertheless[,] has brought that to the Court's attention." (Doc. #29 at 4). The Court then explained that it considered and rejected White's pro se objection to the PSI's conclusion that he was a career offender under the Sentencing Guidelines. *Id*. at 9-10. But the Court likewise rejected the PSI's recommendation of a 235-month sentence and sentenced him to 188 months, which was consistent with the plea agreement and at the lower end of the Sentencing Guidelines' advised range. *Id*. 25-28. White himself, moreover, challenged the PSI as containing false information. *Id*. at 24.

Next, White's claim that his counsel's failure to object to career offender designation constituted ineffective assistance lacks merit. Counsel's opinion on this issue did not fall below an objective standard of reasonableness because the Court of Appeals found no error in the trial court's determining that he was a career offender within the meaning of the Sentencing Guidelines. *See* Doc. #30. And, no prejudice resulted from counsel's opinion on this issue since it was consistent with the Court of Appeals' holding. *See id*.

Lastly, White's contentions regarding counsel's representation of him on direct appeal conflict with the record. After sentencing, White was advised of his right to appeal and he indicated his desire to appeal. (Doc. #29 at 30). White's attorney filed a timely notice of appeal on White's behalf, as instructed by the Court. White did not inform the Court to appoint new counsel, *see id*. at 29-31. Nothing in the record of the sentencing hearing indicates that White wanted new counsel to represent him on appeal, and he did

7

not express dissatisfaction with his counsel's representation.  *See id.*  After counsel filed an *Anders* brief, White had 21 days (from date of service) to file a response.  He did not do so and did not take any other action indicating dissatisfaction with counsel.  His first indication of dissatisfaction came in his present §2255 Motion, filed nearly one year later.  For these reasons, the record does not support White's challenges to his counsel's representation of him on direct appeal.

Accordingly, White has not shown either that counsel's performance fell below an objective standard of reasonableness or caused him any prejudice.  White's claim of ineffective assistance of counsel therefore lacks merit.

### IT IS THEREFORE RECOMMENDED THAT:

1. Willie E. White's Motion to Vacate, Set Aside, or Correct Sentence (Doc. #32) be DENIED; and

2. Because reasonable jurists would not disagree with the conclusions reached in this Report, Petitioner should be denied any requested Certificate of Appealability.


November 3, 2009

               s/Sharon L. Ovington
               Sharon L. Ovington
              United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).